**NORWICH PHARMACAL COMPANY,**
Plaintiff-Appellee,

v.

**STERLING DRUG, INC., Defendant-Appellant.**

No. 290, Docket 25488.

United States Court of Appeals
Second Circuit.

Argued May 13, 1959.

Decided Nov. 9, 1959.

Lewis C. Ryan, Syracuse, N. Y. (Hancock, Dorr, Ryan & Shove, Philip T. Seymour, Syracuse, N. Y., Paul R. Dohl, Norwich, N. Y., George A. Elber, New York City, Charles W. Shorter, Syracuse, N. Y., on the brief), for plaintiff-appellee.

John T. Cahill, New York City (Cahill, Gordon, Reindel & Ohl, New York City, Kernan & Kernan, Utica, N. Y., James A. Fowler, Jr., David Rasch, New York City, James S. Kernan, Jr., Utica, N. Y., Raymond L. Falls, Jr., New York City, on the brief), for defendant-appellant.

Before SWAN, HINCKS and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff, a New York corporation, and defendant, a Delaware corporation, both engage in the manufacture of drugs and pharmaceutical products. For several years, plaintiff has marketed a pink liquid preparation, "Pepto-Bismol," designed to remedy minor stomach disorders. With the aid of extensive advertising, the sales of Pepto-Bismol have steadily increased; by 1955 plaintiff's product was nationally recognized and was undoubtedly the leader in the field of stomach assuagement. Defendant in 1955 introduced a comparable proprietary medicine, "Pepsamar," which was virtually identical to Pepto-Bismol as regards chemistry, color and flavor but dissimilar as regards container and label. The evidence indicates that defendant's decision to manufacture Pepsamar was prompted in part by retaliatory as well as competitive motives,[1] that defendant previously investigated plaintiff's sales and advertising techniques, and that the pink color was emphasized in the advertising of Pepsamar.

Upon the theory that secondary meaning is no longer required in New York[2] to sustain a finding of unfair competition and the fact that pink is a nonfunctional attribute of plaintiff's product which defendant intentionally copied, the court below[*] permanently enjoined defendant from simulating the pink color of Pepto-Bismol in its product Pepsamar and manufacturing and selling such a product. This injunctive direction was immediately qualified by a proviso that it should not apply so long as the pink Pepsamar were sold in blue bottles or bottles of any other color which would "effectively conceal the pink color of the Pepsamar contained therein." Defendant was also enjoined "from describing its Pepsamar as pink in color, by words or illustrations, in any advertising of Pepsamar or any promotional material * * *." From this judgment defendant appeals.

Distaste for sharp or unethical business practices has often caused the

---

1. Defendant's President expressed his pique at the fact that plaintiff sold its aspirin at a price lower than that of defendant's aspirin, and informed the rival President that defendant would respond by marketing a pink upset stomach medicine. He added that defendant would refrain from using a triangular bottle (a distinctive feature of Pepto-Bismol) for its new product only because counsel so advised.

2. As this is purely a diversity suit and as the parties maintain their principal places of business in New York, it is fair to assume that New York law applies, despite the multi-state ramifications of unfair competition. Maternally Yours, Inc. v. Your Maternity Shop, 2 Cir., 1956, 234 F. 2d 538, 540; American Safety Table Co., Inc. v. Schreiber, 2 Cir., 269 F.2d 255.

* Judge Brennan's opinion, portions of which are included herein, is reported at 167 F. Supp. 427.

courts to lose sight of the fundamental consideration in the law of unfair competition—protection of the public.[3] Added to this standard is a developing body of law which pertains only to business conduct, namely, that a court of equity will restrain such practices as constitute *palming off, actual deception* or appropriation of another's property. Viewed against this background, misunderstanding as to the essential elements of an unfair competition cause of action may well be dissipated.

█ Consumer protection has been limited to the prevention of confusion, i. e., the customer should not mistake defendant's article for that of plaintiff or believe that it derives from the same source as plaintiff's goods. It is in such context that secondary meaning inheres, and when this special significance attaches in the public mind to the non-functional attributes of its wares, a plaintiff need further establish merely the likelihood of confusion—or a defendant may rebut the effect of secondary meaning by proving that confusion is unlikely. Restatement of Torts, Sec. 741 (1938), Lucien Lelong, Inc. v. Lander Co., 2 Cir., 1947, 164 F.2d 395.

█ In cases where the New York courts have occasionally granted relief without proof of secondary meaning, one of the aforementioned predatory practices was established: In Santa's Workshop, Inc. v. Sterling, 3d Dept. 1956, 2 A.D.2d 262, 153 N.Y.S.2d 839, it was palming off; in Oneida, Ltd. v. National Silver Co., Sup.Ct.Madison Co.1940, 25 N.Y.S.2d 271 and Avon Periodicals v. Ziff-Davis Publishing Co., 1st Dept. 1953, 282 App.Div. 200, 122 N.Y.S.2d 92, it was actual deception; in Dior v. Milton, Sup.Ct.N.Y.Co.1956, 9 Misc.2d 425, 155 N.Y.S.2d 443, affirmed 1st Dept. 1956, 2 A.D.2d 878, 156 N.Y.S.2d 996, and Metropolitan Opera Ass'n v. Wag-

ner-Nichols Record Corp., Sup.Ct.N.Y. Co.1950, 199 Misc. 786, 101 N.Y.S.2d 483, affirmed 1st Dept. 1951, 279 App. Div. 632, 107 N.Y.S.2d 795, it was violation of plaintiff's property rights.[4] The federal decisions fall into the same pattern: Artype, Incorporated v. Zappulla, 2 Cir., 1956, 228 F.2d 695, and Flint Co. v. Oleet Jewelry Manufacturing Co., D.C.S.D.N.Y.1955, 133 F.Supp. 459 (actual deception); Upjohn Company v. Schwartz, 2 Cir., 1957, 246 F.2d 254 (palming off); International News Service v. Associated Press, 1918, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (appropriation of property rights). Hence, the first comer may prevail if he proves secondary meaning plus likelihood of confusion on the one hand or that the second comer has indulged in one of the proscribed practices which equity will enjoin, on the other. The facts here neatly illustrate application of this rule.

█ Plaintiff, while correctly asserting that proof of secondary meaning is not always a prerequisite to securing relief, must fit its case into one of the remaining categories. This it fails to do. There is no evidence of an attempt or intent to pass off Pepsamar as Pepto-Bismol or to divert plaintiff's customers by means of deception. Defendant's finished product is quite dissimilar from that of plaintiff, not only in most of the details, e. g., shape of the bottle, color of the label and appearance of the cap, but also in the overall effect upon the observer.[5] To the prospective purchaser the names on both bottles are in type large enough to be distinguished at a reading distance of over twenty feet. The label covers most of the bottle. Pepto-Bismol's label is yellow with large red letters; Pepsamar's is white with even larger blue letters. Indeed, it stretches credulity to imagine a purchaser confusing these disparate articles. Moreover,

**3.** See Judge Frank's discussion of the economic matrix from which the law of unfair competition has developed, Standard Brands, Inc. v. Smidler, 2 Cir., 1945, 151 F.2d 34, 37 (concurring opinion).

**4.** See Note, 70 Harv.L.Rev. 1117 (1957).

**5.** An appellate court is in virtually the same position as the trial judge to evaluate documentary evidence. Upjohn Company v. Schwartz, 2 Cir., 1957, 246 F.2d 254.

the essential distinction in this area of the law, overlooked by the court below, is the difference between a deliberate attempt to deceive and a deliberate attempt to compete. Absent confusion, imitation of certain successful features in another's product is not unlawful and to that extent a "free ride" is permitted. Charles D. Briddell, Inc. v. Alglobe Trading Corporation, 2 Cir., 1952, 194 F.2d 416.

Similarly, there is here no violation of plaintiff's property rights,[6] notwithstanding the fact that defendant investigated and presumably utilized some of the Pepto-Bismol marketing techniques. Such skills cannot be cornered; the competitor must only refrain from using them in such a way that the public is misled. To say that it is unethical for defendant to emphasize pink in its advertising merely begs the question, viz., can the color pink be monopolized in connection with an upset stomach remedy? That a color may become someone's exclusive property as a perpetual monopoly in connection with a specific product has been rejected by the courts throughout the years (Upjohn Company v. Schwartz, supra, note 5; Campbell Soup Co. v. Armour & Company, 3 Cir., 1949, 175 F.2d 795, certiorari denied 1949, 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518; Doeskin Products, Inc. v. Levinson, D.C.S.D.N.Y. 1955, 132 F.Supp. 180; Radio Corporation of America v. Decca Records, Inc., D.C.S.D.N.Y.1945, 51 F.Supp. 493; 3

Callman, Unfair Competition and Trade-Marks, p. 1105 (2nd Ed.1950)).

Despite the fact that the trial court found "that the pink color has no functional value as the word is commonly used and understood," this conclusory finding rests upon too narrow a foundation. The function of a remedy "For Upset Stomach" is to quiet the upset. Hence, although the court found "that the pink color and the ingredients producing same have no healing value in themselves," yet it recognized that the pink color was "designed to present a pleasing appearance to the customer and to the sufferer." From the court's premise that "a disordered stomach will accept that which is pleasing and reject that which is repulsive," a finding of functional value might well be made because a rejected stomach medicine scarcely has a fair opportunity to fulfill its function. See Columbus Plastic Products v. Rona Plastic Corp., D.C.S.D. N.Y.1953, 111 F.Supp. 623.[7] The court was undoubtedly influenced by defendant's intentional copying of plaintiff's pink color, but, as pointed out, this factor alone cannot be determinative.

While not relying on it, the trial court apparently found that secondary meaning had been established.[8] But the only proof offered by plaintiff to support this finding was its public-opinion survey, the results of which indicate no more than the popularity of Pepto-Bismol.[9] From the above analysis, it fol-

6. Although still expanding, this category has been limited to instances of interference with confidential or contractual relations. See Judge Palmieri's thorough analysis of the misappropriation cases, Continental Casualty Co. v. Beardsley, D.C. S.D.N.Y.1957, 151 F.Supp. 28, 43–45, affirmed 2 Cir., 253 F.2d 702, certiorari denied 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58.

7. It is not necessary, however, to decide whether the pink color, because of its purported psycho-somatic effect, has a therapeutic value in upset stomach medicines. Cf., the broad definition of "functional" in the Restatement of Torts, Sec. 742 (1938). The medicinal ingredients, of course, are functional.

8. The theory advanced here is not that any pink liquid means Pepto-Bismol to the public (and thus we are spared the bizarre picture of a sufferer consuming hand lotion in order to mollify his stomach), but rather that pink upset stomach medicine is connotative of plaintiff's product.

9. For criticism of a comparable survey, see American Luggage Works, Inc. v. United States Trunk Co., Inc., D.C.D. Mass.1957, 158 F.Supp. 50, affirmed Hawley Products Co. v. United States Trunk Co., 1 Cir., 259 F.2d 69. Proof of secondary meaning has traditionally entailed fairly rigorous evidentiary requirements. The term or characteristic must have "been used in such a manner, over such a

lows that where the plaintiff relies on this category, it must prove the existence of secondary meaning, and any notion that mere proof of deliberate copying without more shifts the burden to the defendant constitutes a misreading of Mastercrafters Clock & Radio Co. v. Vacheron & Constantin Le Coultre Watches, Inc., 2 Cir., 1955, 221 F.2d 464, certiorari denied 350 U.S. 832, 76 S.Ct. 67, 100 L.Ed. 743. In that case there was abundant evidence of actual confusion, palming off and an intent to deceive. Judge Frank stated that the burden was on defendant to prove that the intended deception had not been consummated.[10] Standing as it does on the conceded part-imitation and the ineffectual survey, plaintiff has failed to discharge its burden of proof and the judgment must be reversed. Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299, 300.

Although the trial court referred to similarities of ingredients, of slogans, i. e., "For Upset Stomach," the use of "Pep" in the name,[11] and the breaking of the respective names into two lines, nevertheless none of these similarities was subjected to injunction or change. Properly so because no monopoly attached to attributes as functionally descriptive slogans. The names are recognizably different and "Pep" appears as an apocopate form of "peptic," pertaining to digestion, and used to describe many remedies. Limitation of the injunction to the suppression not of the pink colored medicine but only of the color which the purchasing public might see through a clear glass bottle is indicative that the court felt that plaintiff had preempted unto itself exclusively and

forever this appearance of a pink color for a stomach medicine. As pointed out in James Heddon's Sons v. Millsite Steel & Wire Works, D.C.E.D.Mich.1940, 35 F.Supp. 169, 174, "[t]here are only seven primary colors. These colors have been used ever since man first noticed the rainbow."

Reversed.

---

period of time, and to such an extent that the purchasing public associates" it with the goods of a particular source. Automatic Washer Co. v. Easy Washing Machine Corp., D.C.N.D.N.Y.1951, 98 F. Supp. 445, 450. It is therefore worth noting that evidence was introduced to show the existence, past or present, of at least 33 other pink upset stomach remedies. Assuming, as contended, that these products have enjoyed limited commer-

cial success, they at least serve to demonstrate plaintiff's heavy burden in proving the exclusive public association of pink and Pepto-Bismol.

10. See My-T Fine Corp. v. Samuels, 2 Cir., 1934, 69 F.2d 76.

11. "Pepsamar" had been a registered trade-mark belonging to defendant but for a somewhat different product.