**GEMVETO JEWELRY COMPANY, INC., Plaintiff,**

v.

**JEFF COOPER, INCORPORATED and Jeff Cooper, individually, Defendants.**

**No. 81 Civ. 3347 (EW).**

United States District Court, S.D. New York.

July 19, 1985.

Jarblum & Solomon, P.C., New York City, for plaintiff; James D. Fornari, New York City, of counsel.

Colvin Miskin Basseches & Mandelbaum, New York City, for defendants; Howard C. Miskin, Howard F. Mandelbaum, Abraham Friedman, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The plaintiff, Gemveto Jewelry Company, Inc. ("Gemveto"), has a preeminent reputation as a designer and manufacturer of extra high quality jewelry, in terms of craftsmanship, style, and design. Its products are so distinctive that they are recognized in the trade as the "Gemveto look." Jean Vitau, principal of Gemveto and the inventor of two patents at issue, has been described by his principal customers as a genius in designing, styling, and producing fine quality jewelry.

In 1981, Gemveto commenced this action against Jeff Cooper, Incorporated, another jewelry manufacturer, and Jeff Cooper, its principal (collectively "Cooper"), for selling a wide variety of Gemveto "knockoffs," less expensive, lower quality copies of many items in Gemveto's widely marketed product line. Plaintiff charged Cooper with infringement of two patents, the so-called 245 and 818 patents;[1] copyright infringement of three items of jewelry; trademark infringement and unfair competition in violation of section 43 of the Lanham Act;[2] and unfair competition in violation of New York's statutory and common law.

After a bench trial, the Court, in an opinion dated July 15, 1983,[3] familiarity with which is assumed, dismissed all of plaintiff's federal claims. As to the patent infringement claims, the Court held that the 245 patent was valid but had not been infringed and that the 818 patent was invalid because of prior art references, as discussed hereafter. As to the copyright claims, the Court held that plaintiff had failed to comply with the notice requirement of the Copyright Act of 1976[4] or to make a reasonable effort to rectify the omission. Finally, as to the Lanham Act claims, it held that, while there was proof of intentional copying of several items of Gemveto jewelry by Cooper, plaintiff had failed to prove that the copied items had acquired a "secondary meaning" apart from that attributable to their settings— i.e., the method by which the stones are held in position—which were found to be functional and therefore unprotectable.

With respect to the state claims, the Court held that Cooper had engaged in unfair competition in violation of New York common law and that Gemveto was entitled to injunctive relief. The Court found that many items in Cooper's line of jewelry are "mirror images" or "knockoffs" of Gemveto products and that Cooper intentionally copied plaintiff's jewelry.[5] Accordingly, judgment was entered permanently enjoining defendants from selling or offering for sale "any piece of jewelry which is confusingly similar in appearance to any piece of

---

1. United States Patent Nos. 4,222,245 and 4,292,-818.

2. 15 U.S.C. § 1125(a).

3. *Gemveto Jewelry Co. v. Jeff Cooper Inc.,* 568 F.Supp. 319 (S.D.N.Y.1983).

4. 17 U.S.C. § 401(a).

5. *Gemveto Jewelry,* 568 F.Supp. at 334–35.

Gemveto jewelry, having nonfunctional attributes that are original with Gemveto."

Soon after the entry of judgment, Cooper moved for modification of the order and judgment "to specifically denominate the attributes which defendants may not use in combination in their jewelry or, in the alternative, to itemize defendants' styles, received in evidence, which may no longer be offered for sale." Defendants also moved for reconsideration of the judgment upon the ground that the authorities cited by the Court in upholding plaintiff's claim of unfair competition do not apply in a case of product design simulation. Plaintiff then cross-moved to punish Cooper for contempt for violating the terms of the injunction. This motion was referred to Magistrate Buchwald to hear and report; following a hearing, the Magistrate recommended that Cooper not be held in contempt. Thereafter, plaintiff further moved, upon the ground of newly discovered evidence, to vacate the judgment insofar as it held the 818 patent invalid.

Thus, the Court now has before it the Magistrate's report concerning plaintiff's contempt motion, together with the parties' objections and responses thereto; defendants' motion for modification or reconsideration of the judgment concerning plaintiff's claim of unfair competition, as well as their motion to stay the judgment pending disposition thereof; and plaintiff's motion to vacate the judgment that the 818 patent is invalid upon the ground of newly discovered evidence and for a new trial on that issue.

### THE CONTEMPT MOTION AND THE MAGISTRATE'S REPORT

Defendants assert that shortly after judgment was entered they and their attorney reviewed their entire product line and were unable to determine which pieces are "confusingly similar in appearance to any piece of Gemveto jewelry, having nonfunctional attributes that are original with Gemveto." Specifically, they claim they are uncertain whether the jewelry settings—which dominate the overall appearance of the jewelry despite differences in the color arrangements, numbers, and sizes of the stones but which were found to be functional and therefore unprotectable—should be considered in determining whether Cooper's jewelry is "confusingly similar in appearance" to Gemveto's. They also assert they are uncertain about which nonfunctional attributes of Gemveto jewelry are "original with Gemveto," since the Court found that the identifiable and distinctive feature of Gemveto's jewelry is the settings, which are functional. Finally, defendants say they are uncertain whether they are prohibited from copying Gemveto's original nonfunctional attributes singly or only as combined by Gemveto.

In sum, defendants claim they cannot be sure they have complied with the terms of the injunction and ask the Court to clarify its order by specifying those attributes of Gemveto jewelry that, in combination, defendants may not employ, or, if the Court declines to do so, by specifying those pieces of defendants' jewelry that may no longer be offered for sale and as to which defendants must deliver up for destruction the molds, models, waxes, catalogues, and advertisements. In the meantime, defendants have eliminated four items from their product line that they believe are very similar in appearance to Gemveto jewelry and have ceased distributing the catalogue in which those items appear. However, they have not delivered up the molds for those items and have continued to sell the remainder of their product line and to distribute a brochure containing samples from their line.

 Magistrate Buchwald essentially found that defendants' uncertainty is justified for at least one of the reasons they assert. She recommends that Cooper not be held in contempt because the injunction is not sufficiently clear and specific as required by Fed.R.Civ.P. 65(d) and because Cooper promptly moved for clarification and modification of the decree. The Court accepts the Magistrate's finding that the injunction requires clarification. The Court also accepts the statement of defense coun-

sel that he made a good faith effort to advise his clients as to the scope of the injunction. By promptly reviewing their product line with counsel, eliminating four items therefrom, and moving for clarification of the decree, all within ten days after entry of the Court's order, defendants were reasonably diligent and energetic in attempting to comply with the decree. Under the circumstances, an order of contempt is not justified.[6] Accordingly, plaintiff's contempt motion is denied.

## THE MOTION TO VACATE AS TO THE 818 PATENT

Both the 245 and 818 patents concern methods developed by Gemveto for setting precious stones in jewelry. Although the 818 contains improvements over the 245, there are substantial similarities between the two patents and the Court found that the 818 teachings are obvious in light of the 245. By itself, however, this finding did not invalidate the 818 because plaintiff filed a terminal disclaimer, which rendered the then-pending 245 application not prior art as to the 818. The Court also found that plaintiff introduced the public to the 245 teachings by placing on sale in the market two items employing these teachings, a ruby ring and a sapphire ring, more than one year prior to the filing date of the 818 application—in fact, some thirteen to fourteen months previously. The Court held that despite the terminal disclaimer, these rings, on sale more than one year prior to the filing of the 818 application, were prior art references as against the 818. Because the 818 teachings were obvious in light of this prior art, the 818 patent was declared invalid under 35 U.S.C. § 103.[7]

The finding that the ruby and sapphire rings employed the 245 teachings was the underpinning of the holding that the 818 was invalid. Gemveto now claims that this finding is erroneous in view of newly discovered evidence and moves pursuant to Fed.R.Civ.P. 60(b)(2) to vacate the judgment as to the 818 and for a new trial of its claim of infringement of the 818 patent. It claims it recently located the model used to make the ruby ring and that the model lacks several features included in the 245 teachings as set forth in the 245 patent application. It further claims that the sapphire ring, though shaped differently from the ruby ring, employs the same construction—that of the ruby ring model. Thus, it contends, the newfound model is concrete proof that neither ring employed the teachings of the 245 patent, so that the sale of these rings more than one year before the 818 application was filed did not render them prior art references as to the 818 and did not invalidate the 818 patent under section 103.

At the trial, Jean Vitau, Gemveto's president and founder, testified that both rings employed the teachings of the 245 patent. He now asserts he was mistaken in his testimony because he had to rely upon his recollection of the rings, which he had designed four years earlier, and did not have the benefit of reviewing the ruby ring model at or prior to the trial. Vitau states that despite a diligent search of Gemveto's premises during and after the trial, he was unable to locate the model until some nine months after judgment was entered, when "by pure accident" he found it and other models "secreted" in a "back area" once used by a former employee who, Vitau

---

**6.** A defendant may not be held in contempt for failing to comply with a court order if the order is not definite and specific, *see International Longshoreman's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967); *United States v. Charmer Indus., Inc.,* 722 F.2d 1073, 1079 (2d Cir.1983); *UFI Razor Blades, Inc. v. District 65, Wholesale, Retail, Office & Processing Union,* 610 F.2d 1018, 1024 (2d Cir.1979), or if the defendant has been reasonably diligent and energetic in attempting to accomplish what

was ordered, *see Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 646 F.2d 800, 808–09 (2d Cir.1981); *Powell v. Ward,* 643 F.2d 924, 931–33 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981); *Aspira of New York, Inc. v. Board of Educ.,* 423 F.Supp. 647, 654 (S.D.N.Y. 1976).

**7.** *Gemveto Jewelry,* 568 F.Supp. at 325–28; *see* 35 U.S.C. § 102(b).

believes, had removed the models from Gemveto's depository without Gemveto's knowledge. In essence, plaintiff contends it was deprived of valuable patent rights in Vitau's inventions because of Vitau's faulty memory and the conduct of a disgruntled former employee. It urges the Court to reopen the record so that hard evidence in support of the validity of the 818 patent can be considered at a new trial.

■ Fed.R.Civ.P. 60(b)(2) provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." In order to reopen the trial upon the ground of newly discovered evidence, the Court must be satisfied that the ruby ring model (1) is in fact newly discovered, i.e., discovered since the trial; (2) could not with due diligence have been discovered earlier; (3) is not merely cumulative or impeaching; (4) is material to the issues; and (5) is such that upon a retrial it would probably produce a different result.[8] A motion under Rule 60(b) is addressed to the discretion of the Court.[9]

■ Although the existence of the ruby ring model was known to plaintiff prior to trial, and despite efforts to locate it for use upon the trial, the whereabouts of the model was not discovered until well after the trial had ended and judgment had been entered. Thus, Cooper opposes the motion on two main grounds, first, that plaintiff has failed to show the evidence could not with due diligence have been located earlier and, second, that the evidence is offered solely to impeach Vitau's trial testimony

and would not change the outcome of the trial.

As to the due diligence requirement, Vitau asserts that, in response to Cooper's subpoena for various models "[o]n the eve of trial," he located several but could not find the ruby ring model; that during the entire trial he continued to search for the model, reviewing several thousand models during those weeks; that, after reviewing the Court's decision invalidating the 818 patent and before the end of the ten day period in which a motion for a new trial pursuant to Rule 59 must be filed, he and his staff conducted a full-scale and intensive search of Gemveto's vaults, storage rooms, and every other location within Gemveto's facility where the model might have been stored, searching through dozens of bins containing thousands of ring models; and that after the ten day period ended he personally conducted a systematic review and search of almost every part of Gemveto's manufacturing facilities whether or not it was a storage facility. None of these efforts was successful. Cooper questions the sufficiency of these allegations but offers no reason to doubt the sincerity or intensity of the effort made by Vitau and his staff in attempting to locate the model, and none is apparent on the papers before the Court. Although Vitau offers little factual support for his conclusion that the model was "secreted" in a "back area" by a former employee without Gemveto's knowledge, other than the allegation that this "back area" was used by the employee, the fact remains that, according to Vitau, the model was not found in any area where plaintiff's personnel would have expected to find it. Since Vitau and his staff clearly had a strong incentive to locate the model

---

8. *United States v. On Lee,* 201 F.2d 722, 723 n. 3 (2d Cir.), *cert. denied,* 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364 (1953); *Champion Spark Plug Co. v. Gyromat Corp.,* 88 F.R.D. 526, 527 (D.Conn. 1980), *aff'd on opinion below,* 636 F.2d 907 (2d Cir.1981) (per curiam); *United States v. Fassoulis,* 203 F.Supp. 114, 117 (S.D.N.Y.1962); *see Westerly Elecs. Corp. v. Walter Kidde & Co.,* 367 F.2d 269, 270 (2d Cir.1966) (per curiam); *Ope Shipping, Ltd. v. Underwriters at Lloyds,* 100 F.R.D. 428, 432 (S.D.N.Y.1983).

9. *See United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 493 (2d Cir.), *cert. denied,* 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983); *Audiovisual Publishers, Inc. v. Cenco, Inc.,* 580 F.2d 50, 52 (2d Cir.1978); *International Controls Corp. v. Vesco,* 556 F.2d 665, 670 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); *see also United States v. Johnson,* 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946).

within the ten day period after judgment was entered, there is no reason to doubt Vitau's statement that the model had been misplaced, and whether this was due to the deliberate act of a disgruntled employee or merely to inadvertence is beside the point. The Court accepts Vitau's statement that immediately after the entry of judgment, as well as during the trial, plaintiff made a sustained and intensive but unsuccessful effort to locate the model, and it concludes that the model is evidence "which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."

According to Vitau, the newfound model establishes that he was mistaken in his trial testimony that both the ruby and sapphire rings were based upon the 245 patent[10]—an error that he attributes to faulty memory. Contrary to Cooper's contention, however, the model is not offered merely to impeach Vitau, in the sense of lessening his credibility so as to weaken the force of his prior testimony; rather, it is offered as affirmative and concrete proof of a contrary assertion bearing directly upon a pivotal issue in the case.[11] Although the proffered evidence conflicts with testimony given by the movant's own witness, it is highly relevant and material to a central issue at the trial and cannot be characterized as merely cumulative or impeaching. The proof, had it been offered upon the trial, may well have averted the finding of invalidity of the 818 patent based upon prior publication.

■ Upon a new trial of the 818 patent infringement claim, the trier of fact would be confronted with a direct conflict between Vitau's prior testimony and his proffered testimony based upon the newfound ruby ring model, which surely would subject him to close cross-examination. Nevertheless, new testimony based upon physical evidence, if accepted by the fact finder, could prove more persuasive than prior testimony by the same witness based solely upon his memory, even though the prior testimony is against the witness' interest and the new testimony is not. Such could be the case here, at least with respect to the ruby ring. As to the sapphire ring, the credibility issue would be much sharper, for the model for that ring was in evidence and was reviewed by Vitau when he testified that that ring was based upon the 245 patent.[12] He did not have to rely upon his memory of the model for that ring. Vitau now claims the construction of the sapphire ring was identical to that of the ruby ring, which was not based upon the 245, despite marked differences in the shapes of the two rings. Nevertheless, the trier of fact could find that Vitau, after examining the ruby ring model, which was unavailable at trial, and refreshing his recollection about the constructions of the two rings, was honestly mistaken in his testimony about the sapphire ring model and justifiably changed his description of the construction of that ring as well as the ruby ring. A witness may be inconsistent or contradictory as to material matters in his own testimony and yet be found entirely credible in the essentials of his testimony. The ultimate question to be decided is whether the witness, despite the contradiction, is credible as to essential matters.[13] This question must be answered by the trier of fact upon a new trial.

■ Whether or not the proffered evidence would produce a different result upon a new trial of the 818 patent claim is a close question. Nevertheless, after a painstaking review of the extensive trial record, the affidavits and briefs submitted on the motion, and upon lengthy and deep reflection, I have concluded that the requested relief should be granted in the interest of justice. In its prior opinion, the Court, while compelled by reason of the

---

10. *See* record at 238–39 (testimony of Jean Vitau).

11. *Compare On Lee,* 201 F.2d 722.

12. Record at 348–54 (testimony of Jean Vitau).

13. *See United States v. Tropiano,* 418 F.2d 1069, 1074–75 (2d Cir.1969), *cert. denied,* 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970).

factual development to invalidate the 818 patent as well as plaintiff's other claims, observed that "defendants have appropriated much of what it has taken Vitau years to develop" and their "conduct is to be condemned" but noted that, as to the 818, the issue was "not whether it would be fair to uphold the validity of the patent as against the defendant, but whether it would be fair to do so as against all others."[14] Mindful that the orderly administration of justice requires that findings of the trier of fact, whether court or jury, should not be disturbed on a motion of this type except in the most extraordinary circumstances,[15] the Court concludes that such circumstances are present in this case. Accordingly, the Court, in the interest of justice, grants plaintiff's motion for a new trial with respect to the 818 patent claim.

## THE MOTION FOR MODIFICATION OR RECONSIDERATION

Defendants move to reconsider that part of the judgment holding them liable for violating New York's law against unfair competition. The Court found that in several instances Cooper had copied not only Gemveto's settings but its designs—the number, color, size, shape, and alignment of the stones and the jewelry configurations. The Court held that

> [u]nder the common law of New York, deliberate use of a competitor's nonfunctional marks or tradedress is actionable. There need be no showing of secondary meaning as with the Lanham Act. Rather, the issue is "whether or not the public is likely to be confused."[16]

Cooper argues that the Court erroneously relied upon authorities that "are not applicable to the jewelry pieces, the sale of which was enjoined." In essence, Cooper claims that the authorities cited by the Court involve copying of tradedress or

trademarks while Cooper copied Gemveto's designs—"the aesthetic appearance of the jewelry pieces themselves, and not their packaging or containers"—and that this kind of copying, namely, product simulation, is not actionable under New York law without a showing of secondary meaning. Cooper also claims that the copied designs are aesthetically functional—and therefore unprotectable—in that they contribute to consumer appeal because they are aesthetically pleasing and not because they indicate Gemveto as the source of the jewelry. Finally, Cooper argues that the Copyright Act of 1976, 17 U.S.C. § 301, as well as the Supreme Court's *Sears-Compco* doctrine[17] addressing the interplay between federal patent and copyright law and state laws against unfair competition, preempts state law protection for Gemveto's jewelry designs.

Plaintiff responds that New York law against unfair competition prohibits product simulation as well as tradedress infringement without a showing of secondary meaning, if the copying is deliberate, as the Court found it to be here. Plaintiff further asserts that the settings were found to be the only functional attributes and that the designs are nonfunctional even if they contribute to consumer appeal. As to preemption, plaintiff replies that the *Sears-Compco* doctrine, as developed by the lower courts, has not caused the demise of state law prohibiting unprivileged imitation and that New York's law against unfair competition, which requires a showing of misappropriation of another's economic value and a likelihood of consumer confusion as to the source of the goods, does not protect a right equivalent to any granted by the Copyright Act and thus is not preempted by section 301.

---

14. *Gemveto Jewelry*, 568 F.Supp. at 328, 334.

15. *See Fassoulis*, 203 F.Supp. at 117; *see also Johnson*, 327 U.S. at 111, 66 S.Ct. at 466.

16. *Gemveto Jewelry*, 568 F.Supp. at 335 (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618

F.2d 950, 953 (2d Cir.1980)) (footnotes omitted).

17. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

■ The first issue presented by defendants' motion to reconsider is whether the Gemveto jewelry designs they copied are functional attributes of plaintiff's products. Under New York common law, the functional attributes of a competitor's product may be freely copied;[18] the copier need only take reasonable steps in packaging, advertising, and promoting the copy to set it apart from the original in the public mind.[19] Our Court of Appeals has defined a functional feature in two different ways, as "one that 'is essential to the use or purpose of the article or [that] affects the cost or quality of the article' "[20] and as one that is " 'an important ingredient in the commercial success of the product.' "[21] Recently, the Court observed that "an obvious tension" exists between the two definitions and found the "important ingredient" formulation to be problematic, though it noted that the formulation might be appropriate in cases involving a particular type of product, such as hotel china, "the essential feature of which [is] the aesthetic appeal of its design."[22] The Court explained that the determination of the functionality issue involves a factual inquiry, which, in a case involving alleged copying of designs of lightweight luggage and bags, it described as follows:

Are consumers likely to purchase a Le Sportsac bag rather than that of a competitor principally because they find LeSportsac's particular combination of design features aesthetically pleasing, or will they buy principally because the product features serve to identify or distinguish the goods as genuine Le Sportsac products? If the latter, the LeSportsac "look" primarily serves a legitimate trademark purpose—identifying the source of the product—and should be eligible for protection even though it is also an "important ingredient" in the product's commercial success.[23]

Thus, in the instant case, the central inquiry is whether consumers are likely to purchase Gemveto jewelry rather than that of a competitor principally because they find the overall designs aesthetically pleasing, in which case the designs are functional and unprotectable, or principally because the designs serve to identify or distinguish the jewelry as genuine Gemveto products, identifiable as the "Gemveto look," in which case they are nonfunctional and protectable.

■ At trial, by far the majority of witnesses wholly equated the Gemveto look with the settings, and the Court so found.[24] This does not mean, however, that the designs were proven to be commercially appealing principally for aesthetic reasons rather than as an indication of source. Indeed, several trial witnesses, though not the majority, explained the identifying characteristic of Gemveto jewelry to be the combination of the setting and the "overall look."[25] On the whole, however, the

**18.** See American-Marietta Co. v. Krigsman, 275 F.2d 287, 289 (2d Cir.1960); Speedry Prods., Inc. v. Dri Mark Prods., Inc., 271 F.2d 646, 648 (2d Cir.1959); Damn I'm Good Inc. v. Sakowitz, Inc., 514 F.Supp. 1357, 1360 (S.D.N.Y.1981); Le Sportsac, Inc. v. Dockside Research, Inc., 478 F.Supp. 602, 606 (S.D.N.Y.1979); PPS, Inc. v. Jewelry Sales Reps., Inc., 392 F.Supp. 375, 384 (S.D.N.Y.1975); Zippo Mfg. Co. v. Rogers Imports, Inc., 216 F.Supp. 670, 679 (S.D.N.Y.1963); cf. Ives Laboratories, Inc. v. Darby Drug Co., 601 F.2d 631, 642–43 (2d Cir.1979) (quoting Pagliero v. Wallace China Co., 198 F.2d 339, 343 (9th Cir.1952) ) (Lanham Act).

**19.** See Feathercombs, Inc. v. Solo Prods. Corp., 306 F.2d 251, 257 (2d Cir.), cert. denied, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962); J.C. Penney Co. v. H.D. Lee Mercantile Co., 120 F.2d 949, 955–56 (8th Cir.1941); Zippo Mfg. Co., 216 F.Supp. at 679.

**20.** See Warner Bros. Inc. v. Gay Toys, Inc., 724 F.2d 327, 331 (2d Cir.1983) (quoting Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982) ); see also Le Sportsac, Inc. v. K Mart Corp., 754 F.2d 71, 77 (2d Cir.1985).

**21.** I.A. Fratelli Saporiti v. Charles Craig, Ltd., 725 F.2d 18, 19 (2d Cir.1984) (quoting Ives Laboratories, 601 F.2d at 643).

**22.** See LeSportsac, 754 F.2d at 77–78.

**23.** Id. at 78 (citation omitted).

**24.** Gemveto Jewelry, 568 F.Supp. at 332.

**25.** Id.

record simply does not establish the principal reason why Gemveto's customers are attracted to the jewelry designs. Therefore, the determination of the functionality issue depends on which side has the burden of proof. Functionality is an affirmative defense to be proved by defendants.[26] Since the evidence at trial was inconclusive as to whether the jewelry designs, aside from the settings, are functional or nonfunctional, Cooper failed to discharge its burden and the designs must be treated as functional attributes protectable under the common law of unfair competition. Accordingly, Gemveto's claim of unfair competition is not foreclosed by Cooper's asserted functionality defense.

■■■ The next issue presented by Cooper's motion to reconsider is whether Gemveto's designs, though treated as nonfunctional, are protectable without a showing of secondary meaning. As a general rule, copying of nonfunctional attributes is actionable only upon a showing that the attributes have acquired secondary meaning and that the copying is likely to confuse potential purchasers as to the source of the product.[27] However, there are exceptions to the rule. Secondary meaning need not be shown, for instance, if the defendant has engaged in so-called predatory practices such as palming off, actual deception of purchasers, or appropriation of property rights.[28]

■■ In the instant case, the Court expressly found that "there was no proof that any Gemveto item had acquired a secondary meaning—aside from that attributed to the settings," which are functional and unprotectable.[29] Consequently, common law protection of Gemveto's designs depends on whether this case falls within one of the exceptions to the rule. Here, there is clear and convincing evidence that Cooper engaged in a predatory practice of palming off its products as Gemveto's. This Court found that "[s]ome of defendants' pieces, aside from their lower quality, are mirror images of Gemveto's" and that "this results from more than simply the

**26.** *See LeSportsac,* 754 F.2d at 75–76. Although the *LeSportsac* holding was based upon section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), there is no reason to apply a different rule in the instant case. Whether the functionality issue arises under federal or state law has not been a factor in its disposition in other respects. *See, e.g., Kellog Co. v. National Biscuit Co.,* 305 U.S. 111, 122, 59 S.Ct. 109, 115, 83 L.Ed. 73 (1938) (state law claim of unfair competition), *cited in Gay Toys,* 724 F.2d at 331 (Lanham Act claim); *J.C. Penney,* 120 F.2d at 954 (state law claim), *quoted in Truck Equip. Serv. Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1217–18 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Damn I'm Good,* 514 F.Supp. at 1360 (federal and state claims treated alike); *Dockside Research,* 478 F.Supp. at 606–07 (state law claim, citing decisions under Lanham Act).

**27.** *See Hygienic Specialties Co. v. H.G. Salzman, Inc.,* 302 F.2d 614, 619 (2d Cir.1962); *Norwich Pharmacal Co. v. Sterling Drug Inc.,* 271 F.2d 569, 571 (2d Cir.1959), *cert. denied,* 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); *Speedry Prods.,* 271 F.2d at 649; *Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc.,* 221 F.2d 464, 466 (2d Cir.), *cert. denied,* 350 U.S. 832, 76 S.Ct. 67, 100 L.Ed. 743 (1955); *Chas. D. Briddell, Inc. v. Alglobe Trading Corp.,* 194 F.2d 416, 418 (2d Cir.1952); *Crescent Tool Co. v. Kilborn & Bishop Co.,* 247 F. 299, 300 (2d Cir.1917); *Sublime Prods., Inc. v. Gerber Prods., Inc.,* 579 F.Supp. 248, 251 n. 4 (S.D.N.Y. 1984); *Zippo Mfg. Co.,* 216 F.Supp. at 679–80.

**28.** *Hygienic Specialties,* 302 F.2d at 620; *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 698 (2d Cir.1961); *Norwich Pharmacal,* 271 F.2d at 571; *see Upjohn Co. v. Schwartz,* 246 F.2d 254 (2d Cir.1957); *Flint v. Oleet Jewelry Mfg. Co.,* 133 F.Supp. 459 (S.D.N.Y.1955); *Santa's Workshop, Inc. v. Sterling,* 2 A.D.2d 262, 153 N.Y.S.2d 839 (3d Dep't 1956) (upholding injunction), *aff'd,* 3 N.Y.2d 757, 143 N.E.2d 529, 163 N.Y.S.2d 986 (1957) (mem.); *Santa's Workshop, Inc. v. Sterling,* 282 A.D. 328, 122 N.Y.S.2d 488 (3d Dep't 1953) (per curiam) (affirming denial of motion to dismiss); *Avon Periodicals, Inc. v. Ziff-Davis Pub. Co.,* 282 A.D. 200, 122 N.Y.S.2d 92 (1st Dep't 1953); *Oneida, Ltd. v. National Silver Co.,* 25 N.Y.S.2d 271 (Sup.Ct.1940). *But cf. Speedry Prods.,* 271 F.2d at 648–50 (secondary meaning is required except in cases involving misappropriation of commercial goodwill, in which recovery does not depend upon confusion or deceit of public); *American Optical Corp. v. North American Optical Corp.,* 489 F.Supp. 443, 448 (N.D.N.Y.1979) (same, citing *Speedry Prods.*).

**29.** *Gemveto Jewelry,* 568 F.Supp. at 334; *see also id.* at 332–33.

use of the Vitau setting method"—that it results from "the exact duplication of plaintiff's jewelry, from the number of stones, the stones' color, their alignment, size and shape."[30] Though Gemveto's designs have not achieved a secondary meaning, Cooper "was not entitled to duplicate plaintiff's product to the point that there would be no obvious distinction between the two to the running eye."[31]

■ Moreover, there is substantial evidence that Cooper employed deceptive marketing techniques and that customers were actually confused as to the source of Cooper's jewelry. For example, defendants published an advertisement in a trade show directory featuring a line drawing of a Gemveto necklace, which drawing had been prepared for Gemveto but never used by it, thereby representing Gemveto's jewelry as their own.[32] There was also testimony by a Gemveto salesman that he entered two retail stores, asked to see Gem-Lok jewelry, and was shown pieces distributed by Cooper.[33] Finally, Gemveto's employee in charge of sales and public relations testified that Gemveto frequently received pieces of Cooper jewelry mistakenly sent to Gemveto for repair, which clearly indicates actual customer confusion as to the source of Cooper's products.[34] In light of this evidence, and of defendants' use of the initials "JC" to identify their jewelry, despite the similarity to plaintiff's trademark "JV,"[35] defendants' manufacture and distribution of Gemveto "knockoffs" can only be regarded as a deliberate attempt to deceive customers as to the source of their products, not as a legitimate attempt to compete with Gemveto. Insofar as Cooper has distributed Gemveto "knockoffs," it has engaged in a predatory practice in violation of New York law, whether or not the copied jewelry has acquired a secondary meaning.

■ Cooper contends that even if Gemveto proved its claim of unfair competition under New York common law, Cooper may not be enjoined because that claim is expressly preempted by the Copyright Act of 1976, 17 U.S.C. § 301, as well as by the *Sears-Compco* doctrine. Section 301 provides:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

\* \* \* \* \* \*

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

For section 301 to apply, two requirements must be met. First, the work of authorship in which the rights are claimed—here, Gemveto's jewelry designs—must fall within the subject matter of copyright as defined in section 102 of the Copyright Act.[36] Jewelry designs are copyrightable matter

**30.** *Id.* at 334–35.

**31.** *Avon Periodicals,* 282 A.D. at 201, 122 N.Y. S.2d at 93.

**32.** Record at 488–90 (testimony of Irene Vitau); see *Gemveto Jewelry,* 568 F.Supp. at 335.

**33.** Record at 547–50 (testimony of Ivan Bass).

**34.** *Id.* at 483–84 (testimony of Irene Vitau).

**35.** *See id.* at 484 (testimony of Irene Vitau).

**36.** *Harper & Row, Publishers, Inc. v. Nation Enters., Inc.,* 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds,* —— U.S. ——, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

and the first requirement is satisfied.[37] Second, New York's law against unfair competition as here construed must "create 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106,'" such as the right "'to reproduce the copyrighted work in copies.'"[38] Cooper contends that this requirement—which, of the two, presents the more substantial issue in this case—also has been met, that Gemveto's claim of unfair competition is essentially an attempt to establish an exclusive right to reproduce its jewelry designs in copies. Having failed to secure this right under federal copyright law, Cooper argues, Gemveto cannot now do so under the guise of a state law claim.

■ Were Gemveto's claim predicated solely upon Cooper's having copied plaintiff's jewelry designs, the claim perhaps would be preempted by federal law.[39] However, it is not merely product simulation but predatory practices that are the basis of the injunctive relief granted herein. As our Court of Appeals has emphasized, the essential distinction with respect to New York's law against passing off is the difference between a deliberate attempt to compete and a deliberate attempt to deceive.[40] In this instance, there was proof not only that Cooper copied Gemveto's products but of a deliberate attempt by Cooper to deceive the consuming public as to the source of its "knockoffs" and thereby to appropriate the goodwill or reputation of Gemveto, a rival seller. Thus, it is Gemveto's right to control and preserve its reputation as a seller of extra high quality jewelry, as well as the public's right not to be misled about the source of the jewelry it may purchase from Cooper, that is protected in this instance. These protected rights are not equivalent to any of the exclusive rights granted under federal copyright law.

■ Cooper's preemption argument fares no better under the *Sears-Compco* doctrine. In holding that federal patent law preempted a state claim of unfair competition based on product simulation, the Supreme Court emphasized that a state may continue "to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original."[41] Here—and in contrast to the *Sears* and *Compco* cases—the evidence is abundant that Cooper's conduct as a whole constitutes a fraud and a deception upon the consuming public. Accordingly, Cooper is enjoined from selling or offering for sale any item of jewelry that is confusingly similar in appearance to any item of Gemveto jewelry such that the sale or offer for sale of such item, by any method or means, is calculated to deceive the public as to its source.

Submit order in accordance with the foregoing disposition within five days upon two days notice of settlement.

---

**37.** *See Kieselstein-Cord v. Accessories by Pearl, Inc.,* 632 F.2d 989, 993 (2d Cir.1980); *Boucher v. DuBoyes, Inc.,* 253 F.2d 948, 949 (2d Cir.) (per curiam), *cert. denied,* 357 U.S. 936, 78 S.Ct. 1384, 2 L.Ed.2d 1550 (1958); 17 U.S.C. §§ 101, 102(a)(5). Whether or not particular pieces of Gemveto jewelry are sufficiently original to qualify for copyright protection or have fallen into the public domain (as is the case with some pieces, *see Gemveto Jewelry,* 568 F.Supp. at 330–31) is of no consequence to the preemption issue. *See Harper & Rowe, Publishers, Inc. v. Nation Enters., Inc.,* 501 F.Supp. 848, 851 (S.D. N.Y.1980) (quoting H.R.Rep. No. 1476, 94th Cong. 2d Sess. 131 (1976), *reprinted in* 1976

U.S.Code Cong. & Ad.News 5747), *aff'd,* 723 F.2d 195 (2d Cir.1983), *rev'd on other grounds,* — U.S. ——, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

**38.** *Nation Enters.,* 723 F.2d at 200 (quoting 17 U.S.C. §§ 106, 301).

**39.** *Compare Editorial Photocolor Archives, Inc. v. Granger Collection,* 61 N.Y.2d 517, 463 N.E.2d 365, 474 N.Y.S.2d 964 (1984).

**40.** *Norwich Pharmacal,* 271 F.2d at 571–72.

**41.** *Compco,* 376 U.S. at 238, 84 S.Ct. at 782.