**GEMVETO JEWELRY COMPANY, INC., Appellee,**

v.

**JEFF COOPER INCORPORATED and Jeff Cooper, Individually, Appellants.**

**Appeal No. 86–763.**

United States Court of Appeals, Federal Circuit.

Sept. 5, 1986.

---

James D. Fornari, of Jarblum, Solomon & Fornari, New York City, argued for appellee, Winston & Strawn, Washington, D.C., of counsel.

Howard C. Miskin, of Colvin, Miskin, Basseches & Mandelbaum, New York City, argued for appellants; Howard F. Mandelbaum, of Colvin, Miskin, Basseches & Mandelbaum, New York City, of counsel.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

Jeff Cooper, Inc. and Jeff Cooper (collectively referred to as Cooper) appeal from the order of the United States District Court for the Southern District of New York, 81 Civ. 3447, in effect enjoining Cooper from selling jewelry of certain designs similar in appearance to the jewelry of Gemveto Jewelry Company, Inc. (Gemveto). We vacate and remand.

## BACKGROUND

Gemveto, a jewelry manufacturer, filed this action against Jeff Cooper Incorporated, a jewelry manufacturer, and its principal, Jeff Cooper, for infringement of two patents, violation of section 43 of the Lanham Act, copyright infringement of Gemveto's works of jewelry, and unfair competition under New York statutory and common law. Cooper asserted a counterclaim for a declaratory judgment of invalidity of the patents and copyrights and sought damages for Gemveto's alleged efforts to coerce Cooper's customers from doing business with Cooper by asserting patent and copyright claims known to be invalid.

The district court's injunction was granted based on Cooper's engaging in acts constituting unfair competition under the common law of New York. The district court dismissed the Lanham Act claims because Gemveto failed to show that the feature sought to be protected, *i.e.*, the design of the setting, was nonfunctional and enjoyed secondary meaning. In contrast, the trial judge determined that secondary meaning is not a requirement under the state common law of unfair competition. The trial judge based his decision on New York common law, not on New York statutory law. The district court's opinion issued July 26, 1983, is reported at 568 F.Supp. 319, 219 USPQ 806 (S.D.N.Y.1983).

In the first order, the district court enjoined Cooper from selling, offering to sell, or disposing of "any piece of jewelry which is confusingly similar in appearance to Gemveto jewelry having nonfunctional attributes that are original with Gemveto." Joint Appendix (J.A.) I–255. In an effort to comply with the order, Cooper presented to the court four pieces of jewelry that were arguably within the scope of the injunction. Cooper then moved for modification and requested that the order and judgment specifically state the attributes which Cooper may not use in combination in its jewelry or, in the alternative, itemize Cooper's styles that were put in evidence during trial which it may no longer offer for sale. Gemveto cross-moved for contempt of court alleging that Cooper violated the injunction. The contempt motion was referred to a magistrate to hear and report with recommendations to the district court. The magistrate noted that Cooper had the difficult task of identifying the original, nonfunctional attributes of Gemveto's setting to which the district court's order referred. The magistrate concluded that Gemveto should provide reference to the transcript which might indicate the nonfunctional, original attributes referred to in the judgment. J.A. I–358. Upon review-

ing the transcript excerpts offered by Gemveto, the magistrate concluded that the excerpts failed to "provide a basis for a meaningful alternative reading of original nonfunctional attributes or an identification of other original aspects of Gemveto jewelry." J.A. I–359. The district court adopted the magistrate's report, denied the contempt motion, and provided additional discussion of New York common law in a July 19, 1985 opinion, reported at 613 F.Supp. 1052, 227 USPQ 623 (S.D.N.Y. 1985).

On July 25, 1985, Cooper's attorney filed an affidavit stating that all exhibits entered during trial and subsequent publications prominently bear Cooper's logo, a fanciful J.C., its name and address. He further asserted that these advertisements are evidence that Cooper has taken the requisite steps to avoid any error as to the source of the jewelry and introduced advertisements from several trade journals illustrating use of a bar as a setting and showing various items similar in appearance to the jewelry of both Gemveto and Cooper. Subsequent to Cooper's attorney's affidavit, the trial judge issued another order, the September 9, 1985 order. In this order, the trial judge recognized that the parties have irreconcilable differences, and referred the case to the magistrate to hear and report "with respect to the items of jewelry manufactured or sold or offered for sale by defendants which are confusingly similar in appearance to any item of plaintiff's [Gemveto] jewelry and to recommend the judgment to be entered." J.A. I–433. Pursuant to this order, the magistrate held hearings to consider the issue of which pieces of Cooper's jewelry were confusingly similar to pieces of Gemveto's jewelry. Specific rulings were recommended to the trial judge, who then rendered his final order.

ISSUE

Whether a court may enjoin, under color of state common law of unfair competition, the copying and selling of jewelry designs.

OPINION

Our decision today resolves a dispute concerning the permissible scope [1] of an injunction in view of the companion Supreme Court decisions *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). We decide neither the substance of New York unfair competition common law nor whether the trial judge was clearly erroneous in his findings of fact.[2] Fed.R.Civ.P. 52(a).

While, " 'there was no proof that any Gemveto item had acquired a secondary meaning—aside from that attributed to the settings,' which are functional and unprotectable," the trial judge found that "there is clear and convincing evidence that Cooper engaged in a predatory practice of palming-off its products as Gemveto's." *Gemveto*, 613 F.Supp. at 1062, 227 USPQ at 629. Continuing, he found "there is substantial evidence that Cooper employed deceptive marketing techniques and that customers were actually confused as to the source of Cooper's jewelry." *Id.* at 1063, 227 USPQ at 630. The final order by the district court permanently enjoined Cooper "from selling or offering for sale any item of jewelry that is confusingly similar in appearance to any item of plaintiff's jewelry such that the sale or offer for sale of such item, *by any method or means, is calculated to deceive the public as to its source....*" J.A. I–439 (emphasis added). Notwithstanding these findings and the ar-

1. Fed.R.Civ.P. 65(d) provides that "every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...."

2. This court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1) because non-frivolous patent claims were asserted at trial. *See Atari Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1431–38, 223 USPQ 1074, 1080–86 (Fed.Cir. 1984); *see Interpart Corp. v. Imos Italia*, 777 F.2d 678, 228 USPQ 124 (Fed.Cir.1985).

ticulation of the basis for the injunction, the district court did not provide a definition of palming-off under the unfair competition common law of New York. Moreover, in implementing the injunction the trial judge focused on protecting the designs of the jewelry rather than on preventing unfair methods of selling the jewelry. That is, those designs enjoined were determined simply by comparing appearance. J.A. I–434.

Although a trial court is given broad discretionary powers in shaping equitable decrees, *see Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir.1984), injunctive relief should be narrowly tailored to fit the specific legal violations. *See Society for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1251 (2d Cir.1984). Here, the method of implementing this injunction is broader than permissible in view of the *Sears* and *Compco* decisions which hold that copying of the article itself that is unprotected by the federal patent and copyright laws cannot be protected by state law. The injunction imposes unnecessary restraints on Cooper's lawful activity. *See Globe Slicing Machine Co., Inc. v. Hasner*, 333 F.2d 413, 416 (2d Cir.1964), *cert. denied*, 379 U.S. 969, 85 S.Ct. 666, 13 L.Ed.2d 562 (1965) ("The scope of the injunction is not limited sufficiently to prevent infringement of the rights that [Cooper] does have...."). Like the jewelry involved in this case, the *Sears* and *Compco* decisions revolved around products, not trademarks, trade dress, or trade names. In *Sears*, the design of a pole lamp held not protected by either a mechanical or design patent could be freely copied. In *Compco*, the design of fluorescent lighting fixtures that were unprotected by federal patent or copyright law could be freely copied.

The *Sears* and *Compco* decisions did not hold, however, that federal law preempted all state unfair competition law. While a design which receives no protection under federal law may be copied, state law, either statutory or decisional, may require those who copy to identify the source of their product. *See Sears*, 376 U.S. at 232, 84 S.Ct. at 789 ("Doubtless a State may, in

appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect business in the use of their trademarks, labels, or distinctive dress in the packaging of goods...."); *Compco*, 376 U.S. at 238, 84 S.Ct. at 782 ("A State of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original"). Not ignoring the *Sears* and *Compco* decisions, the trial judge further noted:

> Were Gemveto's claim predicated solely upon Cooper's having copied plaintiff's jewelry designs, the claim perhaps would be preempted by federal law. However, it is not merely product simulation but *predatory practices that are the basis of the injunctive* relief granted herein....
>
> ....
>
> Here—and in contrast to the *Sears* and *Compco* cases—the evidence is abundant that Cooper's conduct as a whole constitutes a fraud and a deception upon the consuming public.

613 F.Supp. at 1064, 227 USPQ at 630–31 (emphasis added).

However, the trial judge did not set forth a definition of palming-off, nor did he set forth those predatory practices that met the definition.

## CONCLUSION

Since the final order of the district court did not specify the offensive marketing techniques and acts of palming-off to be enjoined, we vacate and remand for consideration of an appropriate re-wording of the injunction to specify Cooper's acts which would, if not enjoined, constitute palming-off under New York common law.

**VACATED AND REMANDED.**