NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SAGAM SECURITE SENEGAL,**

*Plaintiff-Appellee*

**v.**

**UNITED STATES,**

*Defendant-Appellant*

---

2021-2279

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01138-MMS, Senior Judge Margaret M. Sweeney.

---

Decided: October 12, 2023

---

THOMAS ANDREW COULTER, Norton Rose Fulbright US LLP, Washington, DC, argued for plaintiff-appellee.

WILLIAM PORTER RAYEL, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE.

---

Before PROST, CLEVENGER, and CUNNINGHAM, *Circuit Judges*.

PROST, *Circuit Judge*.

In this bid protest action, the Department of State ("State" or the "agency") appeals a decision by the Court of Federal Claims ("Claims Court") holding that State's decision to cancel and resolicit a procurement contract lacked a rational basis. After making an award to Torres-SAS Security LLC Joint Venture ("Torres"), State discovered that it had violated the Procurement Integrity Act ("PIA") during its initial evaluation of proposals by sharing information from the proposal of SAGAM Securite Senegal ("SAGAM") with competitor Torres. State therefore determined cancellation and resolicitation was warranted. SAGAM protested that decision. The Claims Court granted SAGAM's motion for judgment on the administrative record and entered a permanent injunction. *SAGAM Securite Senegal v. United States*, 154 Fed. Cl. 653 (2021) (*"Decision"*). Based on the unusual facts at hand, we affirm.

## BACKGROUND

### I

On April 19, 2019, State issued a solicitation seeking local guard services for the U.S. embassy in Dakar, Senegal. The solicitation anticipated one base year of performance with the possibility of four additional one-year option periods to be exercised at the sole discretion of the government. The solicitation provided that State would make an award to the responsible offeror with the "Lowest Price Technically Acceptable." J.A. 495. As part of their proposals, the solicitation required offerors to explain whether their "proposed wages and benefits comply with host-country Government or other official wage and benefit levels, such as union agreements, and common practices that might not be mandated by local law." J.A. 479–80.

The agency would also evaluate whether the offeror's proposed employee compensation plan "is reasonable and realistic for the work being performed." J.A. 491.

The agency received proposals from three offerors: SAGAM (the thirty-five-year incumbent provider of guard services for the U.S. embassy in Dakar); Torres; and a third offeror, SAKOM Services WI LLC ("SAKOM"). *Decision*, 154 Fed. Cl. at 659. The agency deemed none of the proposals acceptable as submitted. Because the agency determined that only SAGAM and Torres could improve their proposals through discussions, it eliminated SAKOM from competition and established a competitive range with both SAGAM and Torres. *Id.* On August 23, 2019, the agency initiated round one of discussions and sent letters to both SAGAM and Torres. SAGAM and Torres each submitted revised proposals as part of these discussions. With these revisions, the agency considered both SAGAM and Torres to have submitted acceptable proposals. *Id.*

The procurement entered troubled waters during round two of discussions. On December 3, 2019, State sent discussion letters to both offerors asking each to elaborate on certain proposal aspects and to provide a best and final offer by December 13. *Id.* It is undisputed that the discussion letter sent by the contracting officer to Torres included information taken from charts and footnotes in SAGAM's proposal, including proprietary information. *Id.* In response to the questions and information shared in the agency's second round of discussions, both offerors submitted final, revised proposals. *Id.*

In early March 2020, State awarded the contract to Torres as the lower priced, technically acceptable offeror. *Id.*; J.A. 2161. The award prompted a protest by SAGAM at the Government Accountability Office ("GAO") arguing that Torres proposed an "unreasonably low and unrealistic" price and employee compensation plan. J.A. 2165. State agreed to take corrective action ("initial corrective

action") to resolve SAGAM's allegations and planned to re-evaluate the offerors' employee compensation plans, conduct discussions (if necessary), evaluate final proposal revisions, and make a new award decision. *Decision*, 154 Fed. Cl. at 659.

During the initial corrective action, the contracting officer recognized the agency had potentially violated the PIA through its December 2019 discussion letters. The contracting officer issued a memorandum explaining that she "took information from SAGAM's compensation plan to request additional clarifications regarding [Torres's] compensation plan" during discussions, including sharing a "proprietary benefit." J.A. 2194. She explained that "the record does not clearly demonstrate that Torres' compensation plan was acceptable prior to Round 2" and that after Round 2 discussions, Torres revised its proposal to add "references to several of the mandatory benefits to its compensation plan for the first time." J.A. 2194–95. The contracting officer recognized the risk that "the disclosure of SAGAM's proposal information induced Torres to make material price proposal changes." J.A. 2195. Therefore, she "concluded that there is an impact on the procurement." J.A. 2195. As the Claims Court explained, "[a]t the conclusion of the [contracting officer's] memorandum, a box was checked to indicate that the agency's Head of Contracting Activity ('HCA') concurred with her assessment that a procurement integrity violation had an impact on the procurement, and further stated that 'the contracting officer must cancel the solicitation.'" *Decision*, 154 Fed. Cl. at 659. The contracting officer concluded that because State "cannot mitigate the PIA violation, therefore, we will need to cancel and re-solicit the requirement." J.A. 2219.

On December 2, 2020, State announced to both offerors its intention to cancel the solicitation and issue a new solicitation ("corrective action"). J.A. 3012–13 ("Notice of Solicitation Cancellation"). The notice advised:

> [T]he above referenced solicitation is being cancelled following a determination by the Department of State HCA that the Department violated the Procurement Integrity Act and that the violation impacted the procurement. The Department of State will be issuing a new solicitation in support of U.S. mission Senegal in the near future.

*Id.* Both the letter to SAGAM and to Torres advised that "[y]our company is welcome to submit a response to that future solicitation." *Id.*

## II

On March 30, 2021, SAGAM filed a pre-award protest at the Claims Court arguing that State's decision to cancel and subsequently issue a new solicitation was arbitrary and capricious.[1] J.A. 3017–28. The parties filed cross-motions for judgment on the administrative record. On June 25, 2021, the Claims Court granted SAGAM's cross-motion, denied the government's cross-motion, and entered a permanent injunction. *Decision*, 154 Fed. Cl. at 658.

First, the Claims Court concluded that SAGAM's challenge to the corrective action was ripe. The court reasoned that "State's issuance of a new solicitation is part and parcel of its cancellation of the tainted solicitation," so SAGAM did not have to wait until issuance of a new solicitation to lodge its protest. *Id.* at 662. Further, the court determined that State forfeited a ripeness argument because the government argued "for the first time in its reply brief that SAGAM's challenge to the issuance of a new solicitation is not ripe." *Id.*

Second, the court found the contracting officer's disclosure of SAGAM's proposal information violated the PIA.

---

[1]     SAGAM first filed a protest at GAO, which was dismissed as untimely filed. J.A. 2212.

*Id.* at 663 (citing 41 U.S.C. § 2101(2), 2102(a); Federal Acquisition Regulation ("FAR") 3.104-3). The court reasoned that SAGAM's proposal information "related to the exigencies of complying with local labor laws and labor agreements in Senegal and set forth SAGAM's understanding of those local conditions," which was "essential to SAGAM's plan for the compensation and benefits that would be provided to its guard force." *Id.* The court held that the information disclosed to Torres was "[c]ost or pricing data" prohibited from disclosure under the PIA and additionally held that the disclosure violated fundamental fairness provisions of the FAR. *Id.* at 663–64 (citing FAR 1.102-2, FAR 1.602-2, and FAR 3.101-1).

Third, the court held that the agency's cancellation and resolicitation decision lacked a rational basis because it "merely perpetuates the agency's procurement error so that Torres can continue to benefit from the [contracting officer's] unfairness to SAGAM and her violation of the PIA." *Id.* at 664. Beyond the fact that the FAR *permits* cancellation, State had not shown "that the cancellation decision was reasonable," nor that its decision considered the interests of SAGAM, the victim of the PIA violation. *Id.* at 666.

Fourth, because cancellation and resolicitation did "not reasonably address the [contracting officer's] inequitable conduct," the court concluded that disqualification of Torres from competition was the only appropriate remedy. *Id.* at 669. Although the court observed that "disqualification may seem like a severe sanction," it reasoned that "at times it is the only remedy that can reasonably address a PIA violation." *Id.* at 670.

Finally, the court held SAGAM had established entitlement to injunctive relief. It held (1) SAGAM had succeeded on the merits, (2) SAGAM would suffer irreparable harm without injunctive relief, (3) the balance of hardships favored SAGAM, including because "State is responsible for

the hardships" State would face, and (4) it was in the public interest to grant injunctive relief to preserve the integrity of the procurement process. *Id.* at 671–673. In doing so, the court rejected the government's request for a remand. *Id.* at 674. It entered an injunction that

> directs State to restore this competition to its status precancellation, enjoins State from cancelling Solicitation No. 19AQMM18R0332 and from resoliciting the contract requirement, directs State to disqualify Torres as the beneficiary of improperly disclosed information taken from SAGAM's proposal, and directs State to proceed to award the contract to the remaining offeror in the competitive range if that offeror is determined to be responsible.

*Id.* at 675 (capitalization normalized).

The government appeals.[2] Though not a part of the record, answers to questions posed at oral argument reflect that following the Claims Court's injunction, the agency awarded the contract to SAGAM; SAGAM performed the base year of the contract; the agency has exercised an option year; and the contract terminates in 2027.[3]

---

[2]  Torres did not seek to intervene in the Claims Court proceedings until after the court had entered judgment and three weeks after the government filed a notice of appeal. The Claims Court denied Torres's motion to intervene. *SAGAM Securite Senegal v. United States*, 156 Fed. Cl. 124 (2021). We similarly denied Torres's motion to intervene in this appellate proceeding because it had not intervened at the Claims Court. Order (Nov. 1, 2021), ECF No. 14.

[3]  Oral Arg. at 1:50–2:00, 50:48–52:10, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2279_08072023.mp3.

DISCUSSION

We review the Claims Court's assessment of the agency's cancellation and resolicitation decision de novo, evaluating the agency's action under the Administrative Procedure Act ("APA") "arbitrary and capricious" standard. *See WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020). "Under that standard, an agency action must be set aside if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). We review the decision of the Claims Court to grant or deny injunctive relief for an abuse of discretion. *PGBA, LLC v. United States*, 389 F.3d 1219, 1223 (Fed. Cir. 2004). An abuse of discretion is established if the court "made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact finding." *Id.* We have jurisdiction under 28 U.S.C. § 1295(a)(3).

We first analyze whether the agency had a rational basis for its cancellation and resolicitation decision. Concluding that it was irrational, we next consider the appropriate remedy, including an injunction or a remand to the agency. We hold that given the unusual circumstances in this case, the Claims Court did not abuse its discretion in issuing an injunction.

I

We begin by reviewing the agency's cancellation and resolicitation decision. "[C]orrective action only requires a rational basis for its implementation." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 991 (Fed. Cir. 2018). Under the "highly deferential" APA standard, the "rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" *Id.* at 992 (quoting *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)). We accordingly inquire whether the agency had a rational

basis for its corrective action decision and whether it reasonably explained its exercise of discretion.

## A

At the outset, we affirm the Claims Court's conclusion that the contracting officer's disclosure of SAGAM's proposal information to Torres violated the PIA.

The PIA provides that "a present or former official of the Federal Government" "shall not knowingly disclose contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates." 41 U.S.C. § 2102(a). Contractor bid or proposal information refers to information "submitted to a Federal agency as part of, or in connection with, a bid or proposal to enter into a Federal agency procurement contract, if that information previously has not been made available to the public or disclosed publicly," and includes cost or pricing data and "[i]ndirect costs and direct labor rates." *Id.* § 2101(2). "Cost or pricing data" means "all facts that . . . a prudent buyer or seller would reasonably expect to affect price negotiations significantly." *Id.* § 3501(a)(1).

Here, the solicitation advised offerors that they would be required to compensate employees pursuant to local labor law and that "[t]he rates/prices in Section B shall include the applicable costs necessary to comply with local labor laws." J.A. 478 (Solicitation Section L.11.1.3). The agency's evaluation would "consider whether the employee compensation plan proposed is reasonable and realistic for the work being performed," and "[f]ailure of the compensation plan to demonstrate that the fixed hourly rates contain proposed wages, salaries, and other benefits that are in compliance with local law, other union/labor agreements and decrees, or are below the salaries of the incumbent guard force may be sufficient cause for the Government to reject the proposal." J.A. 491 (Solicitation Section M.2.1.5). Thus, the solicitation required offerors to not only know

local labor laws but also to apply that knowledge to demonstrate that their hourly rates and compensation plan were in compliance with local law.  J.A. 478.

Because the application of local law was an express aspect of the agency's evaluation, each offeror's efforts to ascertain local law and structure its labor rates thereupon constituted sensitive proposal information related to that offeror's strategy for pricing its proposal.  As the Claims Court reasoned: "The information conveyed by the [contracting officer] to Torres was not simply a general reference to publicly available laws and labor agreements— each of SAGAM's citations to these laws and agreements was linked to specific aspects of contract performance and contract costs." *Decision*, 154 Fed. Cl. at 663.  The SAGAM proposal information shared with Torres is readily characterized as "cost or pricing data" within the meaning established by the PIA.   Therefore, disclosure of such information implicates the PIA.

Our conclusion is consistent with the contracting officer's own investigation.  She expressed a concern that "the disclosure of SAGAM's proposal information induced Torres to make material price proposal changes that could have impacted the acceptability of its price proposal," and she found "that there is an impact on the procurement." J.A. 2195.  State concluded that a PIA violation occurred. J.A. 2196, 3012–14.  In light of the agency's own finding, State's litigation position—that the disclosure was not problematic because the information disclosed constitutes only public laws—is indeed puzzling.   Reply Br. 19 ("[N]early all of the information from SAGAM's proposal that was disclosed to Torres was descriptions of Senegalese statutes and public labor agreements."); Appellant's Br. 32–33 (arguing "SAGAM's descriptions of public information in its August proposal were not the kind of information demanding extraordinary protection from disclosure," reflecting no "clear prejudice to SAGAM").  On the contrary, as the Claims Court found, the information

disclosed was "lifted directly" from footnotes to a detailed chart in SAGAM's proposal that used "citations to provisions of laws and labor agreements to explain specific cost categories in SAGAM's proposal." *Decision*, 154 Fed. Cl. at 663. The court noted that the agency never argued that these explanatory footnotes had ever been disclosed publicly. *Id.* at 663 n.6.

State's argument is also belied by State's own admission that the disclosure included SAGAM's *application* of a labor agreement. Reply Br. 20 n.3. We credit the contracting officer and HCA's contemporaneous findings over post-hoc litigation arguments. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020) (explaining that "[c]onsidering only contemporaneous explanations for agency action" instills confidence that later explanations are not mere convenient litigating positions).

We agree with the Claims Court that the contracting officer's disclosure of information taken from SAGAM's proposal constitutes a PIA violation that impacted the procurement.

B

We next consider State's response to its PIA violation. Although the agency is not required to consider and explain every potential remedy, it must provide "a reasonable corrective action and adequately explain its reasoning for doing so." *Dell Fed.*, 906 F.3d at 998. We conclude that State's decision to cancel and resolicit the contract (which included Torres as a prospective bidder) lacks a rational basis.

As an initial matter, we agree with the Claims Court that cancellation and resolicitation must be considered together, since "State's issuance of a new solicitation is part and parcel of its cancellation of the tainted solicitation." *Decision*, 154 Fed. Cl. at 662. The agency has not challenged the Claims Court's consideration of cancellation and

resolicitation as a single agency decision.  We see no reason to consider the two actions separately; cancellation and resolicitation were two components of a single agency decision announced in one breath.  *See* J.A. 2219 ("[W]e will need to cancel and re-solicit the requirement.").  For that reason, although cancellation may have been a reasonable initial remedy to extinguish the tainted procurement, it cannot be divorced from the agency's resolicitation.

The problem with the agency's resolicitation is that it does nothing to address the fact that Torres has erroneously received information on how to improve its proposal that was taken directly from another offeror's own efforts to understand and apply local laws—and, yet, the agency invited Torres to participate in a new solicitation.  J.A. 3013.  As the Claims Court explained, "any reasonable corrective action was required to address, in some substantive way, the fact that Torres now possesses competition-sensitive information that it has no right to possess."  *Decision*, 154 Fed. Cl. at 667.  A mere redo of the procurement cannot erase the knowledge that Torres now has regarding how to comply with solicitation requirements, nor does it remedy SAGAM's loss of its duly-earned competitive advantage.

While a new solicitation *could* be an appropriate remedy with proper mitigation measures in place, the record is devoid of any evidence that the agency considered how to mitigate Torres's knowledge and the harm to SAGAM in a new procurement, as discussed more fully in Section II.B, *infra*.  On appeal, State focuses entirely on the fact that it cancelled the contract, arguing that the cancellation "rationally resolved [the] defect in the 2019 procurement" because that tainted procurement no longer exists.  Appellant's Br. 25.  The agency expressly disavowed any concern for a future procurement: "State's corrective action does not specifically address any defect in any future solicitation for the same requirement.  This is appropriate because there is no future solicitation yet."  Appellant's Br. 26.

The agency's position—that it need not address how a new solicitation could fairly proceed—fails to "adequately explain its reasoning" for its corrective action decision. *Dell Fed.*, 906 F.3d at 998. Because the agency made a combined decision to cancel and resolicit the guard services contract, it was required to provide an explanation that addressed not only cancellation, but resolicitation as well. And, the agency has not shown that resolicitation is reasonable. The record includes only the contracting officer's memorandum identifying the PIA violation and an email from the contracting officer to the HCA stating the need to cancel and resolicit the effort. The record contains no contemporaneous explanation of the corrective action by the contracting officer explaining why the agency considered resolicitation to be a suitable remedy or what mitigation measures would safeguard the parties' interests in a new procurement. Providing no explanation at all discussing both the harm caused by the PIA violation *and* the agency's solution to it fails to demonstrate a rational basis for the decision and in the end frustrates the court's review. We therefore agree with the Claims Court's conclusion that the agency has not provided "any substantive argument as to the reasonableness of the corrective action chosen." *Decision*, 154 Fed. Cl. at 665.

In sum, we conclude that the agency's decision lacked a rational basis and is unsupported by the administrative record. The agency's corrective action is therefore arbitrary and capricious under the APA.

II

Second, we consider the practical next step: if the agency's corrective action lacked a rational basis, what is the proper remedy?

The agency argues that the Claims Court should have resolved the issue through either a remand to the agency or a narrow, flexible injunction: "If State failed to adequately justify why cancellation was an appropriate

remedy for the PIA violation, then the trial court should have remanded for further explanation or restored the status quo ante by setting aside the cancellation while permitting State to re-cancel for any rational reason." Reply Br. 4–5. It stresses the discretion afforded to agencies and argues that the Claims Court erred by ruling that disqualifying Torres was the only rational corrective action. Appellant's Br. 27. Further, it emphasizes that "courts have often recognized that it is possible to reasonably mitigate the effect of [an earlier PIA violation]" and that "[t]here are obvious and plausible mitigation efforts that could be taken to reduce the impact of the disclosure of SAGAM's proposal information upon any future procurement." *Id.* at 23. The agency thus urges this court to find the Claims Court's injunction constituted an abuse of discretion by "improperly stepping into the shoes of the HCA and the contracting officer to disqualify Torres and to award a contract to SAGAM." *Id.* at 24.

SAGAM seeks affirmance of the Claims Court's decision and injunction because State "failed to take steps to properly address the impact of the [PIA] violation and restore fairness to the procurement." Appellee's Br. 22. According to SAGAM, the Claims Court correctly "concluded that the only effective solution that cures the PIA violation and does not penalize SAGAM for the [contracting officer's] improper behavior was to return the procurement to the status quo precancellation and disqualify Torres" through an injunction. *Id.* at 23.

Given the parties' arguments, we analyze (A) the available remedies the Claims Court may afford bid protest litigants—namely, as relevant here, injunctive relief versus a remand to the agency; and (B) the appropriateness of the court's injunction here.

A

The Claims Court has authority to issue an injunction in relation to a bid protest. It has jurisdiction over bid

protests pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1). "To afford relief in such an action, the courts may award any relief that the court considers proper, *including declaratory and injunctive relief* except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2) (emphasis added).

To be sure, injunctions are to be used sparingly. As the Supreme Court has cautioned, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course," and "[i]f a less drastic remedy" is sufficient to address the relevant injury, "no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). To that end, "injunctive relief should be narrowly tailored to fit the specific legal violations." *Gemveto Jewelry Co. v. Jeff Cooper Inc.*, 800 F.2d 256, 259 (Fed. Cir. 1986).

Nevertheless, when an injunction is appropriate, "the Court of Federal Claims has broad equitable powers to fashion an appropriate remedy." *Turner Constr. Co. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011); *PGBA*, 389 F.3d at 1226 ("[T]he language of 28 U.S.C. § 1491(b)(2) . . . provides the Court of Federal Claims with discretion in fashioning relief."). Under the APA standard, the court may, but is not obligated to, enjoin arbitrary and capricious action in relation to a bid protest. *PGBA*, 389 F.3d at 1225–26 ("[S]ection 1491(b)(4) only incorporates the standard of review of section 706(2)(A) and therefore does not deprive a court of its equitable discretion in deciding whether injunctive relief is appropriate.").

The Claims Court may also remand to the relevant agency to resolve matters. The Tucker Act provides: "In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2). Prior

decisions of the Claims Court have considered this provision applicable to bid protests. *See, e.g.*, *IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 81 (2022) (staying case and remanding to agency); *Macaulay-Brown, Inc. v. United States*, 125 Fed. Cl. 591, 607 (2016) (finding agency cancellation and resolicitation decision unreasonable, granting injunctive relief to set aside the proposed corrective action and maintain the status quo, and remanding to the agency).

"A remand 'is the proper remedy where the court doubts that the agency has properly exercised its discretion but recognizes that it is the agency which should exercise that discretion and not the court.'" *IAP Worldwide Servs.*, 160 Fed. Cl. at 74 (quoting 3 Charles H. Koch & Richard Murphy, *Administrative Law and Practice* § 8:31 (3d ed. 2010 & Supp. 2022)). As the Supreme Court noted in *Florida Power & Light Co. v. Lorion*:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

470 U.S. 729, 744 (1985). A remand may be particularly apt in instances where the contracting officer is the appropriate authority to make a decision on a matter in the first instance. *See, e.g.*, *IAP Worldwide Servs.*, 160 Fed. Cl. at 82 ("[R]emand is most useful when an agency retains some discretion with regard to the action it took in violation of the APA." (internal citation omitted)).

In sum, the Claims Court has the authority to either issue an injunction or remand to the agency, and determining the appropriate course may depend on the facts at hand.

B

To resolve this case, the Claims Court chose an injunction. The court's injunction

> directs State to restore this competition to its status precancellation, enjoins State from cancelling Solicitation No. 19AQMM18R0332 and from resoliciting the contract requirement, directs State to disqualify Torres as the beneficiary of improperly disclosed information taken from SAGAM's proposal, and directs State to proceed to award the contract to the remaining offeror in the competitive range if that offeror is determined to be responsible.

*Decision*, 154 Fed. Cl. at 675 (capitalization normalized). We consider whether the court abused its discretion in issuing its injunction. *PGBA*, 389 F.3d at 1223.

1

We turn first to the disqualification of Torres. Although we ultimately conclude that the court's injunction disqualifying Torres was not an abuse of discretion, we note that several points weighed in favor of a remand to the agency to consider in the first instance whether Torres should be disqualified. As discussed above, *Florida Power* and related cases contemplate a remand to the agency "for additional investigation or explanation" in instances where agency action is unexplained. 470 U.S. at 744. Additionally, the FAR vests disqualification decisions with the agency. FAR 3.104-7(d) ("If the HCA concludes that 41 U.S.C. chapter 21 has been violated, *the HCA may direct the contracting officer* to . . . [d]isqualify an offeror." (emphasis added)); *NKF Eng'g, Inc. v. United States*, 805 F.2d

372, 377 (Fed. Cir. 1986) (explaining that a contracting officer may "cause the disqualification of a bidder").

Leaving the disqualification decision to the agency, which often has expertise on procurement matters and is closest to the facts, is in many cases apt because disqualification is a severe remedy—and perhaps more extreme here because this case involves disqualification of an innocent offeror. *IGIT, Inc.*, B-271823, 96-2 CPD ¶ 51 (Comp. Gen. Aug. 1, 1996) ("Exclusion of an offeror is a more reasonable sanction if the offeror's conduct in obtaining a competitive advantage was improper.").[4]   Thus, the government has some basis for its argument that ordinarily such an important decision should remain within the discretion of the contracting officer—and here, the record reflects that the agency did not want or plan to disqualify Torres. *See* J.A. 3013 (State invited Torres to participate in the new solicitation); J.A. 3043 (explaining in a declaration of the contracting officer before the Claims Court that she "concluded that excluding [Torres] from the competition and making an award to SAGAM would unfairly punish [Torres] for my mistake").

However, due to the unusual facts and litigation history of this case, we cannot say that the court's decision to order disqualification of Torres rather than remand to the agency constitutes an abuse of discretion.

Crucially, State presented little to no evidence before the Claims Court suggesting that on remand it could resolve or mitigate its PIA violation in a future procurement. Indeed, it suggested the opposite. The contracting officer admitted that she could not mitigate the PIA violation.

---

[4]   Although GAO decisions are not controlling, we have recognized GAO's expertise in government contract matters. *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1331 n.1 (Fed. Cir. 2011).

J.A. 2219 ("We found that we cannot mitigate the PIA violation."). The agency did not contend in briefing its motion for judgment on the administrative record that it could mitigate its PIA violation. *SAGAM Securite Senegal v. United States*, 156 Fed. Cl. 319, 326 (2021) (explaining that the government did not argue that it "might mitigate the [contracting officer's] improper disclosure to Torres in a new procurement . . . either in its motion for judgment on the administrative record or in its reply brief"). In fact, before the Claims Court, State did not raise mitigation measures until *after* its merits briefing, during subsequent briefing on injunctive relief. *Id.* at 326 & n.4.[5] The court therefore determined that State's mitigation argument was untimely. *Id.* Because State did not show that it could mitigate the harm from its PIA violation in a future procurement, it provided little assurance to the court that a remand would resolve the matter.

Even if State had not forfeited its argument that it could mitigate the harm to SAGAM in a future procurement, the mitigation measures that State raised late in the Claims Court proceedings and again on appeal are questionable at best, leaving the Claims Court to reasonably doubt whether State's mitigation efforts would lead to a satisfactory conclusion. State "suggested to the trial court that the future solicitation might reasonably mitigate the harm of the PIA violation by either listing the Senegalese statutes and labor agreements in the new solicitation, or

---

[5]    The Claims Court explained that its supplemental briefing order "specifically instructed that these briefs did not provide an opportunity for the parties to present additional argument on the merits." *SAGAM Securite Senegal*, 156 Fed. Cl. at 326 n.4. The court noted that State did not argue on the merits that "a mitigation plan could potentially permit Torres to fairly compete against SAGAM in a new procurement." *Id.* at 326.

by requiring all offerors to list applicable Senegalese statutes and labor agreements in their proposals." Appellant's Br. 30 (citing Court of Federal Claims Case No. 21-1138, ECF No. 36 at 5 n.2). While this could level the playing field in favor of other offerors, State's solution ignores that SAGAM presented a stronger understanding of local labor laws in its proposal premised on its thirty-five years of experience but lost that competitive advantage due to State's mistake. *Decision*, 154 Fed. Cl. at 672 (recognizing SAGAM as the "long-term incumbent contractor" who lost the "opportunity to fairly compete"). State's proposed mitigation measures further ignore that the contracting officer disclosed more than public laws alone. The Claims Court found that the disclosed information constitutes SAGAM's own cost and pricing data, concluding that "each of SAGAM's citations to these laws and agreements was linked to specific aspects of contract performance and contract costs." *Id.* at 663. The disclosed information "related to the exigencies of complying with local labor laws and labor agreements in Senegal and set forth SAGAM's understanding of those local conditions. This understanding was essential to SAGAM's plan for the compensation and benefits that would be provided to its guard force." *Id.*; *see also* Reply Br. 20 n.3 (acknowledging the disclosure included SAGAM's application of a labor agreement). For these reasons, State's solution does nothing to address the unique harm to SAGAM from the disclosure of its proposal information.

State's arguments fare no better on appeal and fail to persuade us that the Claims Court abused its discretion by issuing an injunction rather than remanding to the agency. We recognize that, in the normal course, the proper remedy under *Florida Power* and its progeny might have been to

remand to the agency.[6]  *Florida Power*, 470 U.S. at 744. However, the Supreme Court recognized that a remand might not be the "proper course . . . in rare circumstances." *Id.*  The Claims Court acknowledged here that "this type of PIA violation appears to be rare." *Decision*, 154 Fed. Cl. at 669 n.10.  The court found that "the [contracting officer's] actions, which were contrary to law, were highly unusual and egregious," and noted that "protests involving actual procurement integrity violations are relatively rare, as are injunctions issued in the context of corrective actions focused on such violations." *SAGAM Securite Senegal*, 156 Fed. Cl. at 327.

Thus, considering the unique circumstances presented by the contracting officer's PIA violation, the undisputed prejudice to SAGAM, State's admission of its inability to mitigate the harm, State's failure to suggest reasonable mitigation measures even on appeal, and State's continued insistence that no PIA violation even occurred (contrary to both the HCA's and contracting officer's findings), State's actions have created a situation that warrants an injunction.  There are few remaining remedies other than disqualification.  While a remand to the agency to disqualify Torres in the first instance provides due recognition of the contracting officer's discretion and may be preferable in most cases, the Claims Court did not abuse its discretion in concluding an injunction would efficiently resolve this

---

[6]    Notably, State made no mention of *Florida Power* and its progeny—in other words, cases suggesting that we must vacate and remand to allow the agency to better explain its corrective action—at the Claims Court, and did not do so on appeal until its reply brief and at oral argument.  Reply Br. 25; *see also* Citations of Supplemental Authority (Aug. 24, 2023) at 1, ECF No. 67 (conceding it "did not cite to *Florida Power* to support these [remand] contentions at the trial court").

dispute. The Claims Court is empowered to do so. 28 U.S.C. § 1491(b)(2). And, the court is afforded discretion in crafting its injunctive relief. *Turner Constr. Co.*, 645 F.3d at 1388. Accordingly, we conclude the Claims Court did not abuse its discretion in disqualifying Torres from competition.

2

Second, we see no abuse of discretion in the court's order to restore competition to its status pre-cancellation and make an award to the remaining competitive-range offeror.

In *Parcel 49C Ltd. Partnership v. United States*, this court affirmed a decision of the Claims Court that enjoined cancellation of a solicitation by the General Services Administration ("GSA") after GSA had already made award to Parcel 49C. 31 F.3d 1147, 1148 (Fed. Cir. 1994). Because GSA's cancellation decision lacked a rational basis, the court's injunction "required GSA to proceed with award of the solicitation." *Id.* at 1149. We recognized the limited "role the court should play in the procurement process—leaving the choice of contractor up to the Government"—but nevertheless determined the court had "properly utilized its power to grant injunctive relief in pre-award bid protests," *id.* at 1153, finding the injunction "consistent with the Court of Federal Claims' limited role," *id.* at 1154. We noted that "[t]he injunction will remove the taint of illegality from this procurement process without interfering with the Government's discretion to select its own contractors." *Id.* And, in terms of requiring GSA to proceed with its award, we explained "the injunction does not direct the contract award to a particular bidder. This injunctive remedy merely restores the status quo ante the illegal cancellation." *Id.*

Like in *Parcel 49C*, the injunction here did not direct an award to SAGAM. Rather, the injunction specifically directed State "to restore this competition to its status pre-cancellation"; in other words, to the pre-cancellation status

where the agency had established a competitive range with Torres and SAGAM. *Decision*, 154 Fed. Cl. at 675. Because the court found it necessary to disqualify Torres, it directed "State to proceed to award the contract to the remaining offeror in the competitive range if that offeror is determined to be responsible." *Id.* In many ways, the court's order is a product of the limited size of the competitive range. State has recognized that had there been additional offerors in the competitive range, its argument that the court directed award to SAGAM might shift.[7] We find no abuse of discretion in the Claims Court's instruction to return competition to its status pre-cancellation, notwithstanding that in this particular situation there was only one remaining eligible offeror. *See Turner Constr. Co.*, 645 F.3d at 1388 ("Injunctive relief is appropriate if it enjoins the illegal action and returns the contract award process to the status quo ante." (cleaned up)); *Parcel 49C*, 31 F.3d at 1154.

The Claims Court did not abuse its discretion in issuing a permanent injunction disqualifying Torres and directing an award to a responsible remaining offeror in light of the unusual facts of this case and the court's authority to award equitable relief.

## CONCLUSION

For the foregoing reasons, we conclude that the agency's cancellation and resolicitation decision lacked a rational basis. The Claims Court did not abuse its discretion in issuing a permanent injunction to remedy the arbitrary and capricious agency action. We affirm.

## **AFFIRMED**

---

[7] Oral Arg. at 1:03:48–1:04:18.